# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

VS.                                                CASE NO: 6:12-cr-192-Orl-28GJK

JOHN HENRY RAFTOPOULOS

---

## ORDER

Defendant's "Emergency Motion for an Order to the Federal Bureau of Prisons for Immediate Release based on the Covid-19 Pandemic" (Doc. 73) is before the Court for consideration. The Government filed a response. (Doc. 75). Defendant seeks relief alternately asking for release to home confinement to complete release for time served (Doc. 73). Of course, they are two different modes of relief. Home confinement is a matter of place for the sentence imposed. A release based of time served ends the sentence imposed. For the reasons stated below, the motion is due to be denied.

Defendant, 53 years old, has been involved with criminal activity most of his life. Starting at 14 with possession of marijuana and grand theft auto, he progressed through petty theft, uttering and forgery, burglary, simple assault, sexual battery, resisting arrest with violence, possession of a firearm by a convicted felon, to finally, bank robbery. (Presentence Investigation Report "PSR"). In 2000, at the age of 33, he committed 5 bank robberies. (PSR). He was sentenced to 130 months for those robberies with 3 years of supervised release. (Case no. 00-8040-CR, West Palm Beach, later transferred to this Court, case no. 6:13-cr-52). During that term of imprisonment, he received 30 disciplinary infractions, including assault and possession of a dangerous weapon, and had three disciplinary institution transfers. (PSR). He was released from prison to supervised release

in September of 2011. Ten months later, he robbed a bank in West Pam Beach and Palm Bay, Florida, which resulted in this case. In each of those robberies, he passed a note to the teller that said, *inter alia,* "I am willing to die for this money, are you?" The teller he approached in the Palm Bay bank stated he tapped his black pouch and she was afraid it was a bomb. (PSR). After entering a plea, he was sentenced to 120 months followed by 3 years of supervised release.[1] And, because he violated his supervised release imposed for the 2000 bank robberies with the 2012 bank robberies, he received a 24 month term for that violation to follow consecutively to the term imposed for the 2012 bank robberies. Arrested on July 7, 2012, Defendant has served approximately 95 months. His expected release date is February 2022. (Docs. 73, 75).

Prerelease custody is governed by 18 U.S.C. § 3624(c). "Under the plain language of the statute, 'the Bureau of Prisons, not the Court, has the sole authority to prescribe home confinement post-incarceration [under 18 U.S.C. § 3624(c)].'" *United States v. Neeley*, No. 1:14-cr-00096-SEB-TAB, 2020 WL 1956126, at *2 (S.D. Ind. April 23, 2020), quoting *United States v. Rodriguez*, No. 16-CR-167(LAP), 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020). *See also United States v. Caiado*, No. 8:17-CR-561-T-17TGW, 2019 WL 5653810, at *2 (M.D. Fla. Oct. 31, 2019). As recognized by the United States Supreme Court, after the court imposes sentence, "the Attorney General, acting through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). *See also Moore v. U.S. Att'y Gen.*, 473 F.2d 1375, 1376 (5th

---

[1] Of interest, the appellate court noted in its affirmation of Defendant's sentence, that at sentencing Defendant's offense level was erroneously assigned an offense level of 29 when it should have been level 32. The 120 months he received were at the low end of the Guideline range for the offense level of 29. Had it been correctly assigned, the guideline range would have been 151-188 months.

Cir. 1973)(per curiam)("A person convicted of a crime . . . and sentenced to confinement is committed by statute to the custody of the Attorney General at a place to be designated solely by the Attorney General").[2] And, the "crisis caused by the COVID-19 pandemic does not create an exception to the general rule that the courts lack authority to determine whether prisoners should be placed in home confinement." *Neeley*, 2020 WL 1956126, at *2. Therefore, this Court cannot order the BOP to release Defendant to home confinement.

That leaves Defendant's request to reduce his sentence to time served. Defendant cannot demonstrate "extraordinary and compelling reasons" warranting release. The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include certain specified categories of medical conditions. U.S.S.G. § 1B1.13, cmt. n.1(A). Those categories include (i) any terminal illness, and (ii) any "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §1B1.13, cmt. n.1(A). Even when an extraordinary and compelling reason exists, however, this court should only reduce a term of imprisonment if it determines that the defendant is not a danger to the public. U.S.S.G. §1B1.13(2). And this court must consider whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §1B1.13.

The COVID-19 pandemic does not fall into any of these categories. The categories are as to serious medical conditions afflicting an individual inmate, not

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

generalized threats to the entire population. "The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 2020 WL 1647922 at *2; *see also United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because BOP's proposed plan adequately addresses the COVID-19 pandemic).[3] Only one staff member at FCI Fairton, where Defendant is housed, has contracted the Covid-19 virus and has fully recovered. (Doc. 75 at 20). There are no reports of any inmate infections. (*Id.*).

"It is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention otherwise would be warranted. *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (considering pretrial detention). Defendant asserts that he suffers from "severe heart and lung disorders," hypertension, and high blood pressure and these ailments make him more vulnerable to becoming seriously ill should he contract COVID-19, yet he provides no documentation of these

---

[3] *See also, e.g., United States v. Coles*, No. 18-cr-20254, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, No. 17-CR-00533 (CBA), 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, No. 16-CR-167 (LAP), 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomas*, No. 18-cr-579 (JSR), 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, No. 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, No. 4:19-cr-06044-SMJ, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

ailments. His PSR, prepared on May 13, 2013, indicates only that he had weakness in his ankles and left leg and an inflamed disc in his back.

And, although these medical conditions have been identified by the CDC as increasing a person's risk for *developing* serious illness from COVID-19, Defendant has not identified a medical condition that falls within one of the categories specified in the Sentencing Commission's policy statement's application note.[4]

Importantly, Defendant poses a danger to public safety if released. Incarcerated for eleven years for his 2000 bank robberies, in less than a year after he was released, he committed the same crime. During those bank robberies, he asked the tellers if they were willing to die  He was 46 years old at the time.

Moreover, Defendant has failed to exhaust his administrative remedies. Defendant claims he has asked the warden for relief, 30 days have expired, and he has not received any word from the warden. (Doc. 73). But he provides no proof of his request. And, the Government has responded that contrary to Defendant's assertion, there is no record of a request filed with the Warden for Compassionate Release, attaching a record of the Administrative Remedies Log. (Doc. 75 at 13).

The failure to exhaust administrative remedies within the BOP is fatal to a defendant's motion for compassionate release. *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3rd Cir. Apr. 2, 2020) (published) (per curiam) ("Given BOP's shared

---

[4] There is some support that courts have discretion to grant compassionate release on grounds that are not specifically enumerated in Application Note 1 to U.S.S.G. §1B1.13 under the residual category of "other reasons." *See United States v. Pinto-Thomas*, No. 18-cr-579(JSR), 2020 WL 1845875, at *2 ( S.D.N.Y. Apr. 13, 2020). This Court need not address this issue here as Defendant has not asserted any ground that qualifies as "extraordinary and compelling" to grant him relief.

desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."); *see also United States v. Estrada Elias*, No. 6: 06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, Case No. 2:14-cr-129- JVB-JEM, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Leverette*, 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of BOP remedies is requisite for judicial review under 28 U.S.C. § 2241).

Accordingly, Defendant's "Emergency Motion for a Court Order to Authorize the Federal Bureau of Prisons to release the Petitioner in response to the Worldwide Covid-19 Pandemic and under 18 U.S.C. 3582(c)(1)(A)" is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on June 8, 2020.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Attorney
United States Probation Office
John Henry Raftopoulos